492 S.E.2d 99

**In the Matter of George K. LYALL, Respondent.**

**No. 24700.**

Supreme Court of South Carolina.

Submitted Sept. 4, 1997.
Decided Oct. 13, 1997.

122

Wilburn Brewer, Jr., Columbia, for respondent.

A. Camden Lewis, Special Disciplinary Counsel.

PER CURIAM:

■ In this attorney disciplinary matter, respondent admits he has committed misconduct and consents to a suspension of up to nine months. We accept respondent's admissions and suspend him from the practice of law for nine months.

### Padgett Trust Matter

Respondent and his wife served as co-trustees of a trust established on behalf of their children by respondent's father-in-law, Christian D. Padgett. In the past several years, Mr. Padgett would forward appropriate documents to respondent and his wife, request their endorsement as co-trustees, and have them return the documents to Mr. Padgett for filing, recording, deposit, or negotiation. Included in the documents were checks made payable to respondent and his wife as co-trustees.

In January 1995, respondent, in his capacity as co-trustee, received a check in the amount of $23,000 from Mr. Padgett to invest in stock for the children's trust. Instead of investing the funds as Mr. Padgett intended, respondent converted the money to his own use to pay South Carolina state taxes owed by him and his wife. Respondent has made cash restitution to the children's trust.

In November 1996, respondent received a check representing the proceeds of the sale of certain real estate by Mr. Padgett on behalf of the children's trust. The check was

made payable to respondent and his wife, in their capacity as co-trustees, in the amount of $26,057.01. Mr. Padgett intended for respondent and his wife to endorse the check, then return it to him for deposit into the children's trust.

Instead, respondent endorsed the check and endorsed his wife's signature without her prior consent or knowledge. He personally took the check to a bank and negotiated it for two cashier's checks. Respondent negotiated one cashier's check in the amount of $23,566.14 to Richland County Treasurer to pay 1994 delinquent taxes on three properties owned by the 1325 Partnership, of which respondent was a partner. Respondent negotiated the second cashier's check in the amount of $2,490.87, payable to himself, and used the funds for his own purposes.

Respondent wrote a letter to Mr. Padgett in February 1997, apologizing for his conduct but not revealing what he had done with the $26,057.01 check. In March 1997, five months after demands were made of him to explain the missing check, respondent sent Mr. Padgett an "assignment and bill of sale" of his partnership interest in the 1325 Partnership. Respondent stated in a letter that he was resigning as co-trustee and transferring his partnership interest to the children's trust in exchange for the missing check. The 1325 Partnership agreement provides that any transfer or assignment of a partner's interest must be approved by the remaining partners. The other partners had no knowledge of respondent's assignment of his partnership interest. Respondent admits creating the assignment and bill of sale in early 1997 and backdating it to November 1996. Respondent has made cash restitution to the children's trust.

### 1325 Partnership Matter

Respondent was the managing partner of the 1325 Partnership, formed in 1986 to invest in real estate. As managing partner, respondent was in charge of all records and the checking account.

An examination by the state Attorney General's Office of the partnership's financial records from 1992 to 1997 revealed that respondent had withdrawn, in about forty-five check transactions not authorized by the partnership, a total of

$47,587.42 for his personal use. The transactions began in late 1992 and continued through 1996. In an effort to make up for the withdrawals, respondent during the same period deposited into the partnership account or paid on the partnership's behalf the total sum of $36,656.43. Respondent has agreed to make full restitution to the partnership.

### Hathcock v. Navistar Matter

Michael Hathcock and his wife brought separate civil actions against Navistar International Transportation Corp. ("Navistar") after Mr. Hathcock was badly burned in an accident in which the truck he was driving burst into flames after a collision. Hathcock alleged that Navistar, manufacturer of the truck, had negligently designed the fuel system, making it defective and unreasonably dangerous. Navistar retained respondent as local counsel in 1992.

Hathcock's counsel served detailed interrogatories and requests for production on respondent as local counsel for Navistar. In the preamble of the discovery requests, Hathcock's counsel defined certain terms specifically, including the term "fuel system." In an interrogatory, Hathcock's counsel asked Navistar to provide certain information on prior lawsuits regarding the fuel system in Hathcock's truck or any similar fuel systems in other vehicles manufactured by Navistar.

In response, respondent signed answers listing eighteen prior lawsuits, but unilaterally limited the answers to only those suits involving post-collision fuel-fed fires and allegations involving the fuel system of the particular type of truck Hathcock was driving. Hathcock's counsel asked respondent to supplement Navistar's responses, and again informed respondent that the interrogatories were not limited to the particular type of truck Hathcock was driving. Respondent again denied knowledge of any additional suits in supplemental responses.

Hathcock's counsel obtained information from sources other than Navistar about three past lawsuits filed against Navistar by plaintiffs named Podvin, Ryan, and Shilts. Respondent, in consultation with Navistar, had not listed those suits in answers to interrogatories or provided any information about

them. In August 1993, Hathcock's counsel informed respondent he had located two of the prior plaintiffs and intended to call them at trial.

Two weeks later, respondent notified Hathcock's counsel that he had documents from the Podvin and Shilts cases, and produced hundreds of documents from those cases. Respondent admits the three suits involved in-cab fires in Navistar trucks with essentially the same type of fuel system as the truck Hathcock was driving. The Shilts case involved the same type of truck as the one Hathcock was driving; the other two cases involved a medium-duty truck and a pickup truck.

In other interrogatories, Hathcock's counsel asked respondent to identify all employees who helped answer the interrogatories and all employees who would have information about prior claims. Counsel also asked for background information about the employees. In response, respondent objected to identifying those individuals and suggested Hathcock's counsel depose one Navistar official and then determine whether additional information was needed. In an internal letter from respondent to Navistar concerning this discovery request, respondent stated,

> [I]t is my understanding we would rather not produce the information currently available. It is my belief [the federal court] would require us to produce some background information if the issue were brought before [it]; therefore, we need to consider whether we should voluntarily produce a document of our choice or face the risk of producing a document we would rather not produce.

Respondent admits there is an appearance of impropriety and misconduct in the discovery process in Hathcock's case, and respondent acknowledges he is responsible for that appearance.

### Conclusion

In the Padgett Trust and 1325 Partnership matters, respondent admits he converted money belonging to another to his own use, concealed and refused to explain what he had done with the money, improperly created and backdated an assignment and bill of sale of his interest in a partnership, and

126

endorsed his wife's signature on a check without her prior consent. We conclude respondent engaged in conduct involving a criminal act that reflects adversely upon his honesty, trustworthiness, and fitness as a lawyer. He engaged in conduct involving moral turpitude. He acted in a dishonest and fraudulent manner, and engaged in conduct tending to pollute the administration of justice or to bring the courts and legal profession into disrepute. By his actions, respondent violated Rules 8.4(b), (c), (d), and (e) of the Rules of Professional Conduct contained in Rule 407, SCACR, and Rule 7(a)(5) of the Rules for Lawyer Disciplinary Enforcement contained in Rule 413, SCACR.

Finally, a lawyer has an obligation to not unlawfully obstruct another party's access to evidence, and to make reasonably diligent efforts to comply with proper discovery requests. Rules 3.4(a) and (d) of Rule 407, SCACR. Respondent's actions in the Hathcock matter clearly create the appearance that respondent has violated those provisions.

We find that respondent's conduct warrants a definite suspension of nine (9) months from the practice of law. Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing he has complied with Rule 30 of Rule 413, SCACR. In addition to all other requirements respondent must meet to be reinstated under Rule 413, SCACR, no petition for reinstatement shall be accepted until respondent has filed proof that he has made full restitution to the 1325 Partnership as he has agreed to do.

DEFINITE SUSPENSION.

FINNEY, C.J., not participating.